UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

IN RE:   FIDDLER'S CREEK, LLC

_____

FIDDLER'S CREEK, LLC,

        Plaintiff,

v.                                    Case No:   2:14-cv-379-FtM-29CM

NAPLES LENDING GROUP LC
and DANIEL CARTER,

                Defendants/Third
                Party Plaintiff

AUBREY FERRAO, ANTHONY
DINARDO and WILLIAM
REAGAN,

        Third Party Defendants.

_____/

## ORDER

Before the Court are Plaintiff's Motion to Compel Defendant Carter to Produce

Financial Net Worth Discovery ("Motion to Compel," Doc. 253), Nonparty Terri

Carter's Motion to Intervene for the Limited Purpose of Filing a Motion for Protective

Order in Response to Plaintiff's Request for Production of Documents with Regard to

Punitive Damage Claim ("Motion to Intervene," Doc. 268), and Nonparty Terri

Carter's Motion for Protective Order and Request for Hearing ("Motion for Protective

Order," Doc. 269).   For the reasons discussed herein, the Motion to Compel is granted

in part and denied in part, the Motion to Intervene is denied, and the Motion for

Protective Order is denied as moot.   Additionally, Nonparty Terri Carter's request for a hearing is denied.

## I.    Background[1]

Plaintiff, Fiddler's Creek, LLC ("Fiddler's Creek") is the developer of the Fiddler's Creek development project (the "Project"), a master-planned community of almost 4,000 acres located in Collier County, Florida.   Doc. 176 at 3.   During the real estate market decline in 2009, Fiddler's Creek alleges that Defendant, Daniel Carter, came in "under the guise of being a potential financial source for the Project and claimed that he had the present ability to provide a credit facility through Naples Lending and other affiliates. . . ."   *Id.*   Fiddler's Creek alleges in its Second Amended Complaint[2] that Defendant, Naples Lending Group, LC ("Naples Lending"), and Mr. Carter (collectively "Defendants") then requested certain confidential, sensitive, non-public, personal and proprietary information regarding the Project.   *Id.* at 4.

Fiddler's Creek alleges that unbeknownst to it, Defendants had no intention or ability to provide a credit facility, and after receipt of the confidential information, Defendants never attempted to provide a credit facility as originally represented.   *Id.* at 7.   Instead, Fiddler's Creek argues that Defendants used the confidential information they received to assist an entity affiliated with them to purchase the

---

[1] Because of the numerous parties in this action, the Court will refer to the parties by the corporate name or each individual's last name.   Additionally, since the Court will address both Defendant Daniel Carter and his wife, non-party Terri Carter, the Court will refer to Daniel Carter as Mr. Carter and his wife as Mrs. Carter rather than simply referring to them by their last names.

[2] Plaintiff's Second Amended Complaint is the operative pleading in this matter. Doc. 176.

Community Development Bonds within the Project for the financial benefit of that entity and Mr. Carter.   *Id.*

Fiddler's Creek later filed for Chapter 11 bankruptcy and contends that such adverse conduct, schemes and other malicious efforts by Defendants caused Fiddler's Creek to incur significant expense and damage it would not have otherwise incurred in its 2010 bankruptcy.   *Id.* at 8-13.   Thus, Fiddler's Creek filed this action against Naples Lending alleging claims for breach of contract and breach of covenant of good faith and fair dealing.   *Id.* at 13-16.   Fiddler's Creek's Second Amended Complaint alleges claims against Mr. Carter for tortious interference, breach of fiduciary duty and constructive fraud.   *Id.* at 17-21.   Additionally, Fiddler's Creek seeks punitive damages against Mr. Carter.   *Id.* at 21.

The parties have engaged in substantial discovery in this matter.   Below, the Court will address the parties' present discovery and discovery related motions related to Fiddler's Creek's punitive damages claim.

## II.   Plaintiff's Motion to Compel Defendant Carter to Produce Financial Net Worth Discovery

Fiddler's Creek moves to compel Mr. Carter to respond to its Request for Production of Documents with Regard to Punitive Damages Claim ("Financial Discovery").   Doc. 253 at 2.   Fiddler's Creek states that more than five months have passed since the Financial Discovery was served, and Mr. Carter has not produced a single document.   *Id.*   Fiddler's Creek also states that Mr. Carter served blanket objections to the Financial Discovery.   *Id.*   Mr. Carter responds that the discovery sought by Fiddler's Creek goes well beyond establishing net worth for a punitive

damages claim.  Doc. 267 at 1.  Mr. Carter also contends that this information is related to post-judgment collection discovery, or has a true intent to harass and badger not only Mr. Carter, but his family members and business associates.  *Id.*

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1).  Relevance, for purposes of discovery, does not hinge on admissibility at trial and is construed broadly to include any matter that reasonably could lead to the discovery of admissible evidence.  *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978).  A written response to a request for production or interrogatory is due within thirty days after the service.  Fed. R. Civ. P. 33(b)(2), 34(b)(2).  When a party fails to respond within the requisite time frame, the party seeking discovery may move to compel the responses. *Id.* at 37(a)(3)(A).  An evasive or incomplete disclosure, answer or response must be treated as a failure to disclose, answer or respond.  *Id.* at 37(a)(4).

Financial net worth discovery is relevant to a claim for punitive damages, but the scope of such discovery is within the discretion of the court.  *Alexander v. Allen*, No. 2:13-cv-885-FtM-29CM, 2014 WL 3887490, at *2 (M.D. Fla. Aug. 7, 2014) (citing *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1368 n. 37 (11th Cir. 1997)).  The purpose of punitive damages is "to punish the wrongdoer rather than to compensate the aggrieved party." *Snapp v. Unlimited Concepts, Inc.*, 208 F.3d 928, 934 (11th Cir. 2000).  "The Eleventh Circuit has stated that 'in civil cases, we have not required a showing of compelling need before tax information may be obtained by a party in

discovery, but instead have determined that such information need be only arguably relevant.'" *Soliday v. 7-Eleven, Inc.*, No. 2:09-cv-807-FtM-29CM, 2010 WL 4537903, at *2 (M.D. Fla. Nov. 3, 2010) (quoting *Erenstein v. SEC*, 316 F. App'x 865, 869-70 (11th Cir. 2008)).   A defendant's financial condition becomes relevant when punitive damages are sought.   *Soliday*, 2010 WL 4537903, at *2.   Moreover, a defendant's wealth is a factor for consideration in determining the reasonableness for an award for punitive damages.   *Myers v. Central Florida Investments, Inc.*, 592 F.3d 1201, 1216 (11th Cir. 2010).

### a.  Timing of Discovery

First, the Court will address the parties' dispute as to the timing in which the Financial Discovery should occur.   In Mr. Carter's response to the Motion to Compel, Mr. Carter states that Financial Discovery should be postponed until the Court rules on the parties' soon to be filed dispositive motions.   Doc. 267 at 8.   Additionally, Mr. Carter asserts that courts recognize the logic of entirely bifurcating punitive damages until after an adjudication of liability.   *Id.*   (citing *Royal Marco Point I Condo Assoc., Inc. v. QBE Ins. Corp*, No. 3:07-cv-16, 2009 WL 6598002, at *1 (M.D. Fla. Oct. 14, 2009); (*Gallina v. Commerce & Indus. Ins.*, No. 8:06-cv-1529-T-27EAJ, 2008 WL 3895918 (M.D. Fla. Aug. 15, 2008)).   Mr. Carter clarifies, however, that he is not seeking bifurcation of financial net worth discovery, but simply a postponement until after a ruling on dispositive motions.   Doc. 267 at 9.

Fiddler's Creek responds that to interpose further delay would both disrupt the Court's administration of the case and cause undue prejudice because the parties

would be forced to conduct financial discovery during the course of the trial.   Doc. 284 at 5.   Fiddler's Creek also argues that more recently, courts have rejected the approach suggested by Mr. Carter.   *Id.* (citing *Hite v. Hill Dermaceuticals, Inc.*, No. 8:12-cv-2277-T-33AEP, 2013 WL 11088207, at *2 (M.D. Fla. Nov. 18, 2013), *aff'd*, 2013 WL 3799334, at *5 (M.D. Fla. Dec. 23, 2013); *Shores of Panama Resort Community Ass'n Inc. v. Halberthal*, No. 5:14-cv-294-RH-GRJ, 2015 WL 3466127, at *2 (N.D. Fla. June 1, 2015); *Gottwald v. Producers Group I, LLC*, No. 9:12-cv-81297-MARRA, 2013 WL 1776154, at *3 (S.D. Fla. Apr. 25, 2013)).

Rule 26, Federal Rules of Civil Procedure, permits discovery that is relevant to any claim or defense.   Fed. R. Civ. P. 26(b).   In *Shores of Panama*, the court stated that when there is a claim for punitive damages, the Defendant's net worth is relevant and within the scope of permissible discovery, and "[u]nless or until the claim for punitive damages is removed from the claims in this case[,] the [p]laintiff is entitled to take discovery relating to the claims."   2015 WL 3466127 at *1-2.   The court recognized that in most cases financial discovery is not appropriate until after a judgment is entered, but when punitive damages are sought, the plaintiff is entitled to seek discovery under Rule 26.   *Id.* at *1 (citing *Federal Trade Comm'n v. Turner*, 609 F.2d 743, 745 (5th Cir. 1980)); *see also Gottwald*, 2013 WL 1776154, at *3 (finding that it was not premature to allow financial discovery before there was a basis for recovery of punitive damages when Rule 26 permits discovery relevant to any claim or defense, and financial net worth is relevant to a claim of punitive damages); *Pantages v. Cardinal Health 200, Inc.*, 5:08-cv-116-Oc-10GRJ, 2009 WL 1011048, at

*2 (M.D. Fla. Apr. 15, 2009) (granting the plaintiff's motion to compel financial net worth discovery and stating that once the amended complaint was filed that made a claim for punitive damages, under Rule 26, the plaintiff was permitted to seek discovery at that time); *Hite*, 2013 WL 6799334, at *5 (affirming the magistrate judge's ruling that since plaintiff properly pled a request for punitive damages, the plaintiff was entitled to seek financial discovery at that time).   Accordingly, this Court finds that Fiddler's Creek is entitled to seek financial net worth discovery at this time because it has made a claim for punitive damages.

### b.  *Financial Statement*

Next, the Court will address the scope of the Financial Discovery Fiddler's Creek seeks from Mr. Carter.   Fiddler's Creek requests that Mr. Carter complete a sworn financial statement that includes sufficient detail as to his major categories of assets and liabilities,

> including specifically, cash, bank and brokerage accounts, personal property life insurance, retirement accounts, trusts, and interests in real estate and in closely held companies/entities, and in particular (i) the addresses of each parcel of real estate (whether owned individually, jointly with his wife or through any entity), (ii) the names of any entities in which [Mr.] Carter holds a direct or indirect ownership interest, (iii) the percentage of ownership in such real estate and any closely held entities, (iv) the value of such interests (including the basis for such valuation), (v) any debt owed by [Mr.] Carter, including any debt encumbering real estate and the name of the lender holding such debt, (vi) for any interest in a closely held entity, any debt owed by such entity to any person or entity affiliated in any way with [Mr.] Carter, (vii) a description and value of any publically traded securities, (viii) a description of any promissory notes or debts owed to [Mr.] Carter, the payee on such debts and the amounts thereof, and (ix) a listing of any transfers of assets by [Mr.] Carter from January 1, 2014 to the present to any person or entity in excess of $50,000 in a single transfer or group of related transfers, including the name of the recipient of such transfer

and a description of any service or asset, if any, received by [Mr.] Carter
in exchange for such transfer.

Doc 253 at 4-5.  Fiddler's Creek states that this level of detail is necessary because
Fiddler's Creek is concerned with potential attempts by Mr. Carter to transfer or
shield assets in newly formed entities.  *Id.* at 5.  Fiddler's Creek initially noted that
after reviewing public records, it appeared that Mr. Carter or those affiliated with
him have formed approximately seven new entities since this lawsuit began.  *Id.*
Fiddler's Creek updated this statement in its reply stating that the Florida
Department of State, Division of Corporations, indicates that Mr. Carter and his
entity, ITG Management, LLC, now are affiliated with nineteen Florida entities that
have been created since the initiation of this litigation.  Doc. 284 at 2.  Fiddler's
Creek states that the requested information in the financial statement and the
requested documents are an attempt to discover to what extent Mr. Carter holds a
direct or indirect interest in the new entities and what assets have been transferred
to or acquired by those entities.  Doc. 253 at 5.

Mr. Carter responds that the Financial Discovery requested by Fiddler's Creek
goes beyond the information needed to inform the jury of his net worth for purposes
of punitive damages.  Doc. 267 at 1.  He states that he is willing to provide a sworn,
categorized personal financial statement that will sufficiently identify his income,
assets and liabilities but not all of the underlying details and documents delineated
by Fiddler's Creek.  *Id.* at 2-3.  He also states, "[a]s a general matter, [he] has no
objection to providing information summarizing his categories of assets and
liabilities, including specifically, cash, bank and brokerage accounts, personal

property, life insurance, retirement accounts, trusts, and interests in real estate, interests in closely held companies/entities and publically traded entities." *Id.* at 3. Mr. Carter asserts that he would provide three versions of the Proposed Carter Statement (Doc. at 14-16), one for year-end 2014, one for year-end 2015, and a current form. *Id.* at 4. Mr. Carter also indicates that he would be willing to differentiate between the assets and liabilities that are individually owned and those that are jointly held with his wife, Terri Carter. *Id.* at 2. Mr. Carter further states that rather than producing voluminous documents that would require substantial redactions, a more efficient and less intrusive method would be to allow him to provide a sworn financial statement detailing his assets and liabilities. *Id.* at 6-7.

As noted, the scope of financial discovery with within the discretion of the court. *Alexander*, 2014 WL 3887490, at *2. Some courts have found that there are less intrusive means of providing financial discovery than that proposed by Fiddler's Creek. *See, e.g., Hazeldine v. Beverage Media, Ltd.*, No. 94 CIV. 3466, 1997 WL 362229, at *4 (S.D.N.Y. June 27, 1997) (holding that the defendant need only produce a financial affidavit in the form of a personal balance sheet listing his assets, liabilities and a general statement of his net worth); *Hamm v. Potamkin*, No. 98 CIV. 7425, 1999 WL 249721, at *3 (S.D.N.Y. Apr. 28, 1999) (finding that generalized information in an affidavit relating to the defendant's assets, liabilities and general net worth was sufficient); *Collens v. City of New York*, No. 03 CIV. 4477, 222 F.R.D. 249, 254 (S.D.N.Y. July 12, 2004) (finding that having the officer swear to an affidavit declaring her net worth was a more efficient and less intrusive means for obtaining

financial discovery); *Sabatelli v. Allied Interstate Inc.*, No. CV 05-3205, 2006 WL 2620385, at *1 (E.D.N.Y. Sept. 13, 2006) (finding that the deposition testimony of the defendants was sufficient to provide an adequate picture of the defendants' financial status); *Bryant v. Allied Account Services*, No. CV 05-5565, 2006 WL 2620376, at *2-3 (E.D.N.Y. Sept. 13, 2006) (finding that deposition testimony or an affidavit declaring net worth is sufficient to provide a general picture of net worth).

Fiddler's Creek asserts in its reply, that Mr. Carter's reliance on *Collens*, *Hamm* and *Hazeldine*, is misplaced because in those cases, "there were no issues about the complexity of the respective defendants' finances or concerns about the defendants' abilities to artificially minimize their net worth."   Doc. 284 at 2. Moreover, as noted by Fiddler's Creek, in those cases there were no indications that the defendants had provided unreliable statements.   *Id.*   For example, in *Hazeldine*, although the court found that the defendant's legitimate privacy interests outweighed the plaintiff's need for all the specific types of financial information requested, and the defendant needed only to produce a financial affidavit in the form of a balance sheet, the court noted that there was no indication that defendant's statements regarding his financial information would be unreliable.   1997 WL 362229 at *11. The court cited *Open Housing Center, Inc. v. Kings Highway Realty,* 1993 U.S. Dist. LEXIS 15927 (E.D.N.Y. 1993) to support its conclusion, noting that in *Open Housing* the court allowed much broader discovery than a general statement of the defendants' net worth because defendants' previous statements regarding their financial condition were found to be unreliable.   *Id.*   Similarly, in *Hamm*, the court found that

generalized information in an affidavit would be sufficient, but also noted that the plaintiffs would be permitted to request additional financial information at a later date should the information provided by the defendants be deemed unreliable or insufficient.   1999 WL 249721 at *3.

Here, as noted *supra*, Fiddler's Creek states that a search of the Florida Department of State, Division of Corporations, reveals that Mr. Carter and his entity, ITG Management, LLC are affiliated with nineteen Florida entities that have been created since the initiation of this litigation.   Doc. 284 at 2.   Moreover, Fiddler's Creek states that Mr. Carter's conduct under oath in this case justifies more extensive discovery.   *Id.*   Specifically, Fiddler's Creek references a recent deposition of Mr. Carter in which Mr. Carter testified that he had only been a party to one other legal proceeding in his life and he was "vindicated," "won everything," and the other side had to pay all of his damages.   *Id.* at 3 (citing June 13, 2016 Dep. Daniel Carter at 215:22-216:9; 216:24-216:6; 219:5-6).   Fiddler's Creek states that this testimony is untrue.   *Id.*   Fiddler's Creek alleges that the NASD arbitration decision indicates that Mr. Carter's company was ordered to pay $4.79 million, and both Mr. Carter and his company were assessed thousands of dollars in arbitration fees.   *Id.*   Moreover, Fiddler's Creek argues that Mr. Carter has demonstrated that he will be evasive when testifying.   *Id.* at n.4. For example, Fiddler's Creek states that during Mr. Carter's deposition, he was asked where Naples Lending had borrowed money to pay its fees and costs in this case, and Mr. Carter stated that he "might have" lent money to Naples Lending, and then Mr. Carter stated that he was not being forthcoming

with his answers because "he did not 'feel like disclosing it.'"  *Id.* (quoting June 13, 2016 Dep. Daniel Carter at 177:14-22).

Mr. Carter responds in his sur-reply that he did not recall the arbitration proceeding referenced by Fiddler's Creek during the deposition as it occurred seventeen years ago.   Doc. 301 at 2.   Mr. Carter states that the arbitration he detailed during his deposition was one in which the parties disputed amongst each other whether a bond trade had been submitted.   *Id.*   Mr. Carter asserts that the arbitration agreement that it attached as Composite Exhibit 1 (Doc. 301 at 7-14) to his sur-reply confirms his recollection of the arbitration where he "won everything." *Id.*   The arbitration agreement Mr. Carter attached indicates that claimant, Gordon Fixed Income Investments, Inc., of which Mr. Carter was the sole officer and registered agent,[3] was awarded damages, interest and attorney's fees and costs.   *Id.* at 8-12.   Mr. Carter asserts that Fiddler's Creek's allegation that he cannot be trusted is wrong and offensive.   *Id.* at 2.   Mr. Carter also contends that Fiddler's Creek's implication that Naples Lending has improperly moved business opportunities away from Naples Lending also is misplaced because Mr. Carter testified that the costs of this litigation have completely "bankrupted" Naples Lending to the point where there was a need to lend money to that entity.   *Id.* at 5.

Recognizing both parties' concerns, the Court finds that Defendant Carter must provide more than its Proposed Carter Statement, but he is not required to

---

[3] According to the Florida Department of State Division of Corporations, Defendant Carter is the officer and registered agent for Gordon Fixed Income Investments, Inc.   *See* sunbiz.org.

provide the level of detail requested by Fiddler's Creek.    Because Fiddler's Creek has asserted a punitive damages claims, the financial discovery is relevant to this action. *Alexander,* 2014 WL 3887490 at *2.   Additionally, the parties are not disputing the relevance of the discovery.   The parties are disputing the scope of the discovery. Due to Fiddler's Creek's allegations and supporting testimony regarding Mr. Carter's comfort in failing to disclose certain information, along with the evidence showing the numerous entities that have been formed since the inception of this litigation, the Court finds it necessary to require Mr. Carter to produce a more detailed financial statement than the Proposed Carter Statement.   Although the Court does not find Fiddler's Creek's requests to be harassing, as many of the requests are relevant to its claim for punitive damages, the Court recognizes the sensitive and confidential nature of the financial discovery.   Accordingly, the Court will not require Mr. Carter to produce all of the information requested by Fiddler's Creek.   Moreover, to the extent Mr. Carter is concerned about the sensitive and confidential nature of the financial discovery, such discovery is protected by the parties' stipulated confidentiality agreement.   *See* Doc. 282-4.

### 1. *Categories (i), (iii), (iv)*

With respect to the categories identified by Fiddler's Creek for the proposed Financial Statement, the Court will address each category and Mr. Carter's objections to those categories.   In categories (i), (iii), and (iv), Fiddler's Creek requests the addresses of each parcel of real estate Mr. Carter owns individually, jointly with his wife, or through any entity, along with the percentage of such ownership and the

value of such interest.   Doc. 253 at 4.   Mr. Carter objects to providing the specific addresses of each parcel of real estate because he contends that "[t]his level of detail would more closely relate to theoretical post-judgment collection efforts and is not needed if valuation methods are provided for owned real estate based upon a reliable source and under penalty of perjury."   Doc. 267 at 4.   Mr. Carter also states that providing the percentage of ownership is not needed unless Fiddler's Creek intends to seek additional non-party discovery based on these disclosures.   *Id.*   The Court disagrees.

Without providing an address to the parcel of real estate, Fiddler's Creek has no way of determining whether the valuation provided is even remotely accurate, even if the valuation method is provided.   While the method may be reliable, there is no way to determine if that is so without the address of each parcel of real estate. For the same reason, the percentage of ownership also is necessary to verify the valuation.   Accordingly, Mr. Carter must provide the addresses of each parcel of real estate he owns individually or jointly with his wife, other individuals or entities.   At this time, Mr. Carter need not produce the addresses of parcels of real estate he owns through other entities because only Mr. Carter's personal financial information is relevant.   Additionally, to the extent the parcels of real estate are jointly owned with his wife, other individuals or entities, Mr. Carter need not provide the names of those individuals or entities.   The Court finds that information to be irrelevant to the determination of Mr. Carter's net worth. *See Alexander* 2014 WL 3887490, at *3 (finding that financial documents relating to the non-party spouse were irrelevant,

and the information should be redacted); *see also Westbrook v. Charlie Sciara & Son Produce Co., Inc.*, No. 07-2657, 2008 WL 839745, at *4 (W.D. Tenn. Mar. 27, 2008) (finding that jointly filed tax returns are discoverable but the financial information pertaining solely to the non-party spouse may be redacted).   This also should alleviate Mr. Carter's concern that Fiddler's Creek will request additional discovery from those non-parties.

### 2. *Categories (ii), (iii), (iv)*

Next, Mr. Carter objects to providing the specific names of every entity in which he holds a direct or indirect ownership interest and the percentage and valuation of such interest.   Doc. 267 at 4.   Mr. Carter states the only reason this level of detail would be necessary is if Fiddler's Creek sought additional discovery from non-parties with whom Mr. Carter has investments.   *Id.*   Mr. Carter alleges that the potential benefit is disproportionate to the burden and prejudice to Mr. Carter and those entities.   *Id.*   For the reasons stated above, Mr. Carter needs to provide the specific names of the entities, the percentage of his interest and the value of such interest.   Fiddler's Creek would have no way to verify the information without sufficient identification of the entities.   To the extent the entities are jointly owned with Mr. Carter's wife, other individuals, or entities, Mr. Carter need not identify the joint owners, as that information is irrelevant. *See Alexander* 2014 WL 3887490, at *3); *see also Westbrook,* 2008 WL 839745, at *4.   Mr. Carter, however, is correct that to the extent Fiddler's Creek seeks to request additional discovery from the identified entities, the burden and prejudice would be disproportionate to Mr.

Carter and those entities.   Accordingly, Fiddler's Creek is not permitted to seek discovery from any of the identified entities without leave of Court.

### 3.  Category (v)

Fiddler's Creek requests in category (v) that Mr. Carter identify any debt owed by him, including any debt encumbering such real estate, and the name of the lender holding such debt.   Doc. 253 at 4.   Fiddler's Creek states in its reply that this information is relevant if the name of the lender is a person or entity affiliated with Mr. Carter who may have an untraditional, or no, expectation of repayment.   Doc. 284 at 6.   Mr. Carter responds that he is willing to provide the total amount of debt he owes, including any debt encumbering real estate, but objects to providing the specific names of such lender(s) holding such debts.   Doc. 267 at 4.   Mr. Carter asserts that this information is only needed if Fiddler's Creek intends to send discovery to Mr. Carter's non-party creditors.   *Id.*   The Court agrees.   When Mr. Carter responds, however, Mr. Carter must set forth his liabilities as identified in the Proposed Carter Statement with the debts broken down into categories by types of debt.   Doc. 267 at 15-16.   With respect to the debt encumbering real estate, Mr. Carter must identify the specific parcel of real estate with which the debt is associated.   Mr. Carter, however, need not identify the individual lenders.

### 4.  Category (vi)

Mr. Carter next objects to providing, for any interest in a closely held entity, the amount of any debt owed by such entity to any person or entity affiliated in any way with Mr. Carter and the name of each entity that might owe such a debt.   Doc.

267 at 4.   Again, Mr. Carter asserts that this information is not necessary unless Fiddler's Creek intends to seek additional discovery from such entities.   *Id.* Moreover, Mr. Carter alleges that this information would be duplicative of the other categories of information requested.   *Id.*   Fiddler's Creek states that discovery has revealed that in some instances Mr. Carter both owns a real estate asset and certain obligations encumbering the same asset.   Doc. 253 at 5 n.1 (citing Nov. 16, 2012 Daniel Carter Dep. at 53).   The Court agrees that this request goes beyond what is required for financial discovery because it relates to debt owed by the particular entity and not debts directly owed by Mr. Carter.   Therefore, Mr. Carter's objection is sustained, and Fiddler's Creek motion to compel is denied with respect to category (vi).

### 5.  Category (vii)

Next, Fiddler's Creek requests a description and value of any publically traded security.   Doc. 253 at 5.   Mr. Carter states that he is willing to provide a description and total value of any publically traded securities, but not the specific securities he holds.   Doc. 267 at 5.   Mr. Carter states, "[t]hese publically traded securities would be held through investment accounts and have readily available valuations. Fiddler's Creek does not need to know and understand [he] and his wife's specific investment decisions or strategies."   *Id.*   The Court agrees.   Additionally, Fiddler's Creek stated in its reply that Mr. Carter need not include an itemized accounting of the particular stocks, bonds and other holdings in each account.   Doc. 284 at 6.

Accordingly, Mr. Carter need only provide a description and total value of any publically traded securities.

### 6. Category (viii)

Fiddler's Creek next requests a description of any promissory notes or debts owed to Mr. Carter, the payees on such debts and the amounts thereof.   Doc. 253 at 5.   Mr. Carter also states that he is willing to provide the total amount of promissory notes or debts owed to Mr. Carter, but objects to providing the specific names of the counter-party borrowers on such debt.   Doc. 267 at 5.   Mr. Carter states that this detailed disclosure has no value other than to burden the non-parties with further inquiries.   The Court agrees.   Moreover, Fiddler's Creek states, "[Mr.] Carter need not identify the persons or entities who have provided promissory notes to him, or otherwise owe him money, provided that the notes or loans do not encumber any of his assets or represent a debt owed to him by an entity which he has or owns a direct or indirect interest."   Doc. 284 at 6.   Accordingly, Mr. Carter need only identify the total amount of promissory notes or debts owed to him.   Additionally, the Court already has addressed, *supra*, with respect to the debt encumbering real estate, that Mr. Carter must identify the specific parcel of real estate with which the debt is associated but not the individual lenders.

### 7. Category (ix)

Finally, in the Financial Statement, Fiddler's Creek requests a listing of any transfers of assets by Mr. Carter from January 1, 2014 to the present to any person or entity in excess of $50,000.00 in a single transfer or group of related transfers,

including the name of the recipient of each transfer and a description of any service or asset, if any, received by Mr. Carter in exchange for such transfer.   Doc. 253 at 5. Mr. Carter objects because the information is to inquire whether Mr. Carter has improperly, or artificially, stated actual net worth by having made some transfers during the past two years.   Doc. 267 at 5.   Mr. Carter states that Fiddler's Creek would obtain the same information through its three financial statements from year-end 2014, year-end 2015 and current.   *Id.*   Fiddler's Creek responds in its reply that this suggestion by Mr. Carter is illusory because factors such as valuation changes within the proposed categories of assets, including such factors as market forces, could mask any previous transfers of assets.   Doc. 284 at 7.

Fiddler's Creek relies upon *Baer v. G & T Trucking Co.*, No. 0:03-cv-03460, 2004 WL 6340449, at *5 (D. Minn. Aug. 26, 2004), for the proposition that Fiddler's Creek may obtain financial information related to whether a defendant has attempted to transfer income or assets to avoid potential liability.   *Id.*   In *Baer*, the defendant was a trucking company, and after the filing of the complaint, the defendant decided to sell the long-haul trucking aspect of its business.   *Id.* at *1. Defendant planned to auction off equipment used for its trucking business.   *Id.*   The plaintiffs became aware of this transaction and sought assurances from the defendant that it had not planned to liquidate assets.   *Id.*   The defendant did not respond.   *Id.* The plaintiffs served a subpoena upon the auction company seeking production of the records related to the auction of defendant's assets.   *Id.* at *2.   The defendant argued that the information is irrelevant, confidential, proprietary and trade secret.

*Id.* at *3.   The plaintiffs responded that the information was relevant to the inquiry into the defendant's ability to satisfy a judgment in the case and to the plaintiffs' claim for punitive damages.   *Id.* at *4.   The court agreed that the information was "relevant to plaintiffs' inquiry into whether defendant has transferred its assets so as to avoid potential liability in this case and, as such, is discoverable now."   *Id.* at *5.   The court reasoned that in light of the recent auction of the defendant's assets, the information was relevant and discoverable.   *Id.*

The Court finds *Baer* persuasive.   Based on the identification of Mr. Carter's newly formed entities since the inception of this litigation, the Court is inclined to grant Fiddler's Creek's request but only to the extent the transfer was made to one of the nineteen newly formed entities.   Unless Fiddler's Creek can find some evidence indicating that there may have been transfers to other entities or individuals, the Court is inclined to limit the scope of the request due to the confidential and sensitive nature of the disclosures.

Accordingly, Fiddler's Creek's Motion to Compel Financials is granted in part and denied in part. Mr. Carter is ordered to produce financial statements for year-end 2014, year-end 2015, and current detailing the information as set forth herein. Because Mr. Carter did not define what he meant by "current," the Court will define current as January 1, 2016 through June 30, 2016.   Additionally, Mr. Carter also must provide the information he agreed to produce, including a summary of his categories of assets and liabilities, and including specifically cash, bank and brokerage accounts, personal property, life insurance, retirement accounts, trusts,

and interests in real estate, interests in closely held companies/entities and publically traded entities. Doc. 267 at 3. To the extent this information overlaps with categories (i-ix) as set forth in Fiddler's Creek's Motion to Compel, Mr. Carter must provide all of the details articulated by the Court in this Order with reference to each category.

### c. *Requests for Production*

Next, the Court will address Fiddler's Creek's requests for production seeking documentation supporting the information provided in financial statement. Doc. 253. Fiddler's Creek states that the documents are needed to verify the information in the Financial Statement. *Id.* at 9. Fiddler's Creek argues that it should not have to accept Defendant's interpretation of the facts, and it is entitled to examine the underlying documentation. *Id.* (citing *Mailloux v. Arrow Financial Services, L.L.C.*, No. 01-cv-2000-DGT-RML, 2002 WL 246771, at *1 (E.D.N.Y. Feb. 21, 2002). Fiddler's Creek relies upon *Soliday* and *Alexander* to support its position that documents supporting Mr. Carter's financial status are discoverable. *Id.* at 6 (citing *Soliday*, 2010 WL 4537903, at *3; *Alexander,* 2014 WL 3887490, at *2-3). In *Soliday*, the court ordered the production of three years' worth of state and federal tax returns, financial statements, and year-end balance sheets. 2010 WL 4537903, at *3. In *Alexander*, the Court ordered the production of tax records; bank statements, savings account passbooks, cancelled checks and statement of account on all accounts, whether at banks, homesteads, savings and loans, thrifts, credit unions, brokerage houses or otherwise; and loan applications and supporting documentation, all for a

period of two years.   2014 WL 3887490, at 2-3.   Thus, Fiddler's Creeks requests that Mr. Carter be compelled to produce the extensive list of documents set forth in its request for production.   Doc. 253 at 6-21.

Mr. Carter contends that he should not have to produce any documents, and the sworn financial statement is a more efficient and less intrusive method to allow Fiddler's Creek to obtain the financial and net worth information it seeks.   Doc. 267 at 5.   Additionally, Mr. Carter asserts that this case is distinguishable from *Soliday* and *Alexander* because the defendants in those cases did not offer to provide sworn financial statements detailing their assets and liabilities.   *Id.* at 7.   Mr. Carter also asserts that the defendants in *Soliday* and *Alexander* objected to the requests for financial discovery on grounds such as relevance, ambiguousness, overbreadth, and that the requests were premature, but the defendants did not offer a more reasonable solution to the plaintiffs' requests.   *Id.*   Here, however, Mr. Carter states that he has offered a resolution to Fiddler's Creeks request, while also maintaining his privacy, by offering to provide Fiddler's Creek with sworn financial affidavits for year-end 2014, year-end 2015 and current.

As noted, the Court finds that Mr. Carter's Proposed Carter Statement is insufficient, and has required that Mr. Carter provide additional details in the sworn financial statement it provides to Fiddler's Creek.   In addition, the Court also directs Mr. Carter to sit for another deposition related to the information provided in the sworn financial statements.   As stated in *Hamm* and *Hazeldine*, both relied upon by Fiddler's Creek and Mr. Carter, a sworn financial affidavit is not sufficient when

there is evidence or allegations of unreliability. *See Hamm*, 1999 WL 249721 at \*3; *Hazeldine*, 1997 WL 362229 at \*11.   Here, Mr. Carter already has revealed a reluctance to provide information when he stated during a deposition that he did not "feel like" disclosing certain information.   Doc. 284 at 3 n.4 (citing June 13, 2016 Dep. Daniel Carter at 177:14-22).   Additionally, in light of Mr. Carter's newly formed entities since the inception of this litigation, the Court finds that Mr. Carter must provide more than the sworn financial statements, and that he also must sit for another deposition.

Due to the confidential and sensitive nature of the financial information requested by Fiddler's Creek, however, the Court denies at this time Fiddler's Creek's requests for documents in addition to the sworn financial statements and related deposition.   The Court finds the sworn financial statements for year-end 2014, year-end 2015 and current, along with the deposition related to the financial statements, to be a more efficient and less intrusive means for Fiddler's Creek to obtain the information it needs.   Additionally, while there is some question of Mr. Carter's reliability, the Court does not find it to be to such an extent as to warrant the extensive and sensitive documentation requested by Fiddler's Creek.   Moreover, Mr. Carter has clarified some of the allegations Fiddler's Creek set forth.   Accordingly, Fiddler's Creek motion to compel the production of documents in support of the Financial Statements is denied.

Mr. Carter shall have up to and including **August 15, 2016** to provide the Financial Statements for year-end 2014, year-end 2015 and a current Financial

Statement covering the period from January 1, 2016 through June 30, 2016 with all of the details set forth herein.   Additionally, following the production of the Financial Statements, Mr. Carter shall make himself available for a deposition solely related to the Financial Discovery provided.   This deposition shall take place on or before **September 2, 2016.**   Mr. Carter is cautioned that failure to comply with this Court's Order in any way, including either by failing to provide the required information or failing to be forthcoming during his deposition, could result in the Court ordering the production of some, if not all, of the requested documentation to further substantiate Mr. Carter's net worth or other sanctions.

Thus, Fiddler's Creek's Motion to Compel is granted in part and denied in part. As a result, its request for attorney's fees associated with bringing this motion is denied pursuant to Federal Rule of Civil 37(a). The Court is not inclined to apportion reasonable expenses associated with Fiddler's Creek bringing this motion because to the extent the motion was granted, the Court finds that for the most part Mr. Carter's related objections were substantially justified.

III.    **Nonparty Terri Carter's Motion to Intervene for the Limited Purpose of Filing a Motion for Protective Order in Response to Plaintiff's Request for Production of Documents with Regard to Punitive Damage Claim and Nonparty Terri Carter's Motion for Protective Order and Request for Hearing**

Nonparty Terri Carter, the wife of Mr. Carter, files the present motion to intervene for the limited purpose of filing a motion for protective order.   Doc. 268. When Fiddler's Creek filed its Second Amended Complaint, it also asserted a claim for punitive damages against Mr. Carter.   Doc. 176 at 21.   Subsequently, Fiddler's

Creek served discovery upon Mr. Carter requesting financial discovery to support its claim for punitive damages, as discussed herein.   Doc. 268 at 2; *see* Doc. 253. Included in the request directed to Mr. Carter was a request for information about financial interests that have not vested in Mr. Carter that were created by his wife. *Id.* at 3.   Mrs. Carter alleges that her personal financial information is not discoverable nor is it relevant to this litigation.   *Id.*   Therefore, she seeks to intervene, under Federal Rule of Civil 24(a)(2), to file a protective order precluding the discovery of her private personal financial information.   *Id.*

Fiddler's Creek responds that Mrs. Carter's motion to intervene should be denied because she makes no attempt to show that her intervention application is timely, nor that there is no party in this suit to adequately represent her interests. Doc. 282 at 1.   Moreover, Fiddler's Creek argues that Mrs. Carter fails to show that she has a direct and substantial interest in the subject of this action, or that the disposition of this case may impair or impede her ability to protect such interest.   *Id.* Thus, Fiddler's Creek contends that Mrs. Carter's Motion to Intervene should be denied.

Rule 24(a) provides for intervention as a matter of right, in relevant portion, as follows:

> On timely motion, the Court must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a)(2).   In the Eleventh Circuit, a party seeking to intervene as a matter of right under Fed. R. Civ. P. 24(a)(2) must satisfy four factors, and if the party is able to do so the Court must allow that party to intervene.   *Purcell v. BankAtlantic Fin. Corp.*, 85 F.3d 1508, 1512 (11th Cir. 1996); *TIG Specialty Ins. Co. v. Financial Web.com, Inc.*, 208 F.R.D. 336, 337 (M.D. Fla. 2002) (citing *Fed. Savings & Loan Ins. Corp. v. Falls Chase Special Taxing Dist.*, 983 F.2d 211, 215 (11th Cir. 1993)). Specifically, a party seeking to intervene must show

> (1) his application to intervene is timely; (2) he has an interest relating to the property or transaction which is the subject of the action; (3) he is so situated that disposition of the action, as a practical matter, may impede or impair his ability to protect that interest; and (4) his interest is represented inadequately by the existing parties to the suit.

Purcell, 85 F.3d at 1512 (citing *Chiles v. Thornburgh*, 865 F.2d 1197, 1213 (11th Cir. 1989).

### a.  Timeliness of the Motion to Intervene

In determining whether a motion to intervene is timely, courts consider four factors:

> (1) the length of time during which the proposed intervenor knew or reasonably should have known of the interest in the case before moving to intervene; (2) the extent of prejudice to the existing parties as a result of the proposed intervenor's failure to move for intervention as soon as it knew or reasonably should have known of its interest; (3) the extent of prejudice to the proposed intervenor if the motion is denied; and (4) the existence of unusual circumstances militating either for or against a determination that their motion was timely.

*Georgia v. U.S. Army Corps of Engineers*, 302 F.3d 1242, 1259 (11th Cir. 2002). Here, Mrs. Carter fails to make any argument that her Motion to Intervene is timely filed.   *See* Doc. 268.   Fiddler's Creek, however, contends that the motion is untimely

because Mrs. Carter reasonably should have known in November 2015, when the Second Amended Complaint was filed alleging a claim for punitive damages, that information related to assets she held in common with Mr. Carter would be discoverable.   Doc. 282 at 6.   Fiddler's Creek also alleges that the time for Mrs. Carter to assert any interest concerning this financial discovery became ripe when Mr. Carter served his objections to financial discovery on January 12, 2016.   *Id.* Because Mrs. Carter waited more than five months after the financial discovery was served, Fiddler's Creek argues that her Motion to intervene is untimely and should be denied.   *Id.*   Additionally, Fiddler's Creek alleges that any prejudice to Mrs. Carter as a result of a denial of this motion would be *de minimus* as her concerns are being addressed by Mr. Carter.   *Id.*

The Court finds that Mrs. Carter's motion is timely.   Although there has been over five months since Mr. Carter served his objections to the financial discovery, the Court had not taken any action on the Motion to Compel when the Motion to Intervene was filed.   In fact, the Motion to Compel was not ripe until July 6, 2016. Doc. 301.   The Court notes that there has been substantial discovery and other activity in this case, but because Mrs. Carter is only seeking to intervene for the limited purpose of filing a protective order related to the financial discovery, the Court finds that her motion is timely.   Moreover, as the Court had not ruled on the Motion to Compel at the time this motion was filed, allowing Mrs. Carter to intervene would not cause any undue delay in the proceedings.   *See, e.g., Georgia*, 302 F.3d at 1259 (11th Cir. 2002) (finding a delay of six months in itself does not constitutes

untimeliness even when discovery was largely complete and the parties had agreed to case schedule because the court had yet to take significant action and intervention would not delay proceeding); *Chiles*, 865 F.2d at 1213 (finding that a motion filed seven months after the filing of the original complaint and before discovery had begun was timely and not prejudicial to the parties); *Naples 9, LLC v. EverBank*, No. 2:11-cv-273-FtM-29, 2011 WL 1884628, at *2 (M.D. Fla. May 18, 2011) (finding a motion was timely when it was filed before a trial date was set and finding no prejudice where the proposed intervener intended to follow the same schedule that parties in the case had agreed upon).

### b.   Whether the Intervenors have an Interest in the Case

In determining sufficiency of interest, the Eleventh Circuit has held that "'the intervenor must be at least a real party in interest in the transaction which is the subject of the proceeding.   This interest has also been described as a direct, substantial, legally protectable interest in the proceedings.'" *Purcell*, 85 F.3d at 1512 (citing *Worlds v. Department of Health and Rehabilitative Serv.*, 929 F.2d 591, 594 (11th Cir.1991).   "A legally protectable interest is something more than an economic interest[;]" rather, the interest must "be one which *substantive* law recognizes as belonging to or being owned by the applicant."   *Mt. Hawley Insurance Company v. Sandy Lake Properties*, Inc., 425 F.3d 1308, 1311 (11th Cir.2005) (emphasis in original).   The proposed intervenor's interest "need not, however, be of a legal nature identical to that of the claims asserted in the main action."   *Chiles,* 865 F.2d at 1214 (internal quotations and citations omitted).

The Court finds that the Mrs. Carter has a valid interest in the disclosure of her personal financial information.   Fiddler's Creek contends, however, even if Mrs. Carter has valid privacy interest in her personal financial information, that interest is insubstantial because Fiddler's Creek does not seek any information solely related to Mrs. Carter's individual income, assets, liabilities, or other financial affairs.   Doc. 282 at 7. Upon a review of the Motion to Compel Financials, the Court agrees. Fiddler's Creek repeatedly has stated that it does not seek any information related solely to Mrs. Carter.   Docs. 282 at 7, 284 at 5 (stating that Fiddler's Creek only seeks information about Defendant's Carters financial circumstances and not the individual income, assets and interests of others).   Therefore, although Mrs. Carter has a direct privacy interest, the Court agrees that it is insubstantial as Fiddler's Creek is not seeking any information solely related to Mrs. Carter.   To the extent such information is included within other discoverable documents, the Court already has found that such information may be redacted and also is subject to the confidentiality order entered in this case.

### c.   Whether the Disposition of the Action will Impede or Impair the Intervenor's Ability to Protect Her Interest

In *Chiles*, the Eleventh Circuit stated that "[w]here a party seeking to intervene in an action claims an interest in the very property and very transaction that is the subject of the main action, the potential stare decisis effect may supply the practical disadvantage which warrants intervention as of right."   865 F.2d at 1214. In this case, Mrs. Carter's interest will be subject to the stipulated confidentiality order entered in this case.   Doc. 282-4.   The confidentiality order provides that,

"[a]ll Confidential Information [ ] produced or exchanged in the course of this litigation shall be used solely for the purpose of preparation and trial of this litigation and for no other purpose whatsoever and shall not be disclosed to any person except in accordance with the terms hereof."[4]  *Id.* at 1.  Thus, Mrs. Carter's interests will be protected upon disposition of this action.

> ### d. Whether the Intervenors' Interest is being Adequately Protected by the Existing Party

As noted in *Chiles*, the Supreme Court has held that this fourth requirement "is satisfied if the proposed intervenor shows that representation of his interest may be inadequate and that the burden of making that showing should be treated as minimal."  *Chiles*, 865 F.2d at 1214 (citing *Trbovich v. United Mine Workers of America*, 404 U.S. 528, 538 n.10, (1972)).  Thus, Mrs. Carter "should be allowed to intervene unless it is clear that [Mr. Carter] will provide adequate representation." *Id.*  Moreover, "[a]ny doubt concerning the propriety of allowing intervention should be resolved in favor of the proposed intervenors because it allows the court to resolve all related disputes in a single action."  *Fed. Savings,* 983 F.2d at 216.  The court in *Federal Savings* noted, however, representation is adequate when there is no collusions between the representative and an opposing party, and if the representative does not have an interest that is adverse to the intervenor.  *Id.* at 216

---

[4] The confidentiality order defines "confidential information" as, "any information of any type, kind or character which is designated as 'Confidential' by any of the supplying or receiving parties, whether it be a document, information contained in a document, information revealed during a deposition, information revealed in an interrogatory answer or otherwise."  Doc. 282-4 at 1.

(citing *United States v. United States Steel Corp.*, 548 F.2d 1232, 1236 (5th Cir. 1969). Additionally, the court stated, "[t]his court will presume that a proposed intervenor's interest is adequately represented when an existing party pursues the same ultimate objective as the party seeking intervention." *Id.* (citing *Athens Lumber Co., Inc. v. Federal Election Comm'n*, 690 F.2d 1364, 1366 (11th Cir. 1982), *cert. denied*, 465 U.S. 1092 (1984); *International Tank Terminals, Ltd. v. M/V Acadia Forest*, 579 F.2d 964, 967 (5th Cir. 1978)).

Here, Mr. Carter seeks to intervene for the limited purpose of protecting her private personal information from being disclosed during discovery. Doc. 268 at 4. Mrs. Carter states that there are no claims against her in this action; she is not a party to this action; and her personal information is irrelevant. *Id.* Mr. Carter, however, makes these same allegations in response to the Motion to Compel. Doc. 267 at 2 (stating that he is willing to differentiate those assets that are individually owned and those that are jointly held with his wife who is not a party to this suit in order to protect her privacy and confidential interests along with the interests of others who associate with him). Additionally, Mrs. Carter makes no argument whatsoever that Mr. Carter cannot adequately represent her interests. Because Defendant Carter is actively pursuing the same ultimate objective as Mrs. Carter, the Court finds that Mrs. Carter's interests are adequately represented. Moreover, as addressed by Fiddler's Creek in its argument that Mrs. Carter's motion is untimely, because Mrs. Carter's concerns are being advanced by Mr. Carter, the extent of any prejudice to her is *de minimus*. Doc. 282 at 6. Allowing Mrs. Carter

to intervene, however, would cause prejudice to Fiddler's Creek in that they would have to divert additional time and resources simply to respond to the same arguments twice.  *Id.*  Thus, Mrs. Carter's request to intervene is denied.

### e. Permissive Intervention

Although Mrs. Carter only argued mandatory intervention under Rule 24(a), the Court will consider the requirements of Rule 24(b).  Rule 24(b) provides for permissive intervention when the proposed intervenor's claims or defenses involve common questions of law or fact and will not prejudice the existing parties or delay resolution of the action.  Fed. R. Civ. P. 24(b)(1)(B).  Thus, "a party seeking to intervene under Rule 24(b)(2) must show that: (1) his application to intervene is timely; and (2) his claim or defense and the main action have a question of law or fact in common."  *Chiles*, 865 F.2d at 1213.  "[I]t is wholly discretionary with the court whether to allow intervention under Rule 24(b) and even though there is a common question of law or fact, or the requirements of Rule 24(b) are otherwise satisfied, the court may refuse to allow intervention."  *Worlds*, 929 F.2d at 595.  Based on the discussion, *supra*, the Court declines to exercise its discretion to allow intervention under Rule 24(b).  Although Mrs. Carter's motion is timely, and her claim as it relates to the financial discovery have common questions of law and fact, the Court finds that permissive intervention is not necessary because Mrs. Carter's interests are being adequately represented by her husband Mr. Carter, and her interests also are protected under the confidentiality order entered in this matter.

Because the Court finds that Mrs. Carter is not entitled to intervene, her Motion for Protective Order (Doc. 269) is denied as moot.

ACCORDINGLY, it is hereby

**ORDERED:**

1.      Plaintiff's Motion to Compel Defendant Carter to Produce Financial Net Worth Discovery (Doc. 253) is **GRANTED in part and DENIED in part.**

        a.   Defendant Daniel Carter shall have up to and including **August 15, 2016** to provide the Financial Statements for year-end 2014, year-end 2015, and a current Financial Statement covering the period from January 1, 2016 through June 30, 2016 in accordance with the directives set forth in this Order.

        b.   Defendant Daniel Carter shall make himself available for a deposition solely related to the Financial Discovery on or before **September 2, 2016.**

2.      Nonparty Terri Carter's Motion to Intervene for the Limited Purpose of Filing a Motion for Protective Order in Response to Plaintiff's Request for Production of Documents with Regard to Punitive Damage Claim (Doc. 268) is **DENIED.**

3.      Nonparty Terri Carter's Motion for Protective Order and Request for Hearing (Doc. 269) is **DENIED as moot.**   Nonparty Terri Carter's request for hearing is **DENIED.**

**DONE** and **ORDERED** in Fort Myers, Florida on this 19th day of July, 2016.


CAROL MIRANDO
United States Magistrate Judge


Copies:
Counsel of record