**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**FORT MYERS DIVISION**

FIDDLER'S CREEK, LLC,

      Plaintiff,

v.                              CASE NO.: 2:14-cv-379-FtM-29CM

NAPLES LENDING GROUP, LC,
DANIEL CARTER,

      Defendants.

                                     /

## DEFENDANTS' OBJECTION TO ORDER DENYING *DAUBERT* MOTION REPLIES

Pursuant to 28 U.S.C. § 636 and Federal Rules of Civil Procedure 6(a)(1)(C) & (d), and 72(a), Defendants hereby respectfully object to the non-dispositive order entered by Magistrate Judge Mirando on August 31, 2016, denying their requests for replies to Plaintiff's responses to two *Daubert* motions (Doc. No. 406) (the "**Order**"). Defendants respectfully request that the Order be modified or set aside.

### SUMMARY OF THE OBJECTION

Plaintiff, the developer of a 4,000-acre community, alleges that Defendants caused it to incur over $1 million more in legal fees in its complicated, but ultimately confirmed, chapter 11 reorganization in 2010-2011 by "riling up" other constituencies in the case to advance pleadings opposing those of Plaintiff. Defendants moved under *Daubert* to exclude two purported experts that Plaintiff seeks to have testify about its bankruptcy case. Plaintiff responded by attempting to amend portions of the opinions and testimony that Defendants sought to exclude, and then successfully opposed Defendants' request for a reply to address these changes in position. Absent the relief sought herein, this Court will be reviewing new facts and arguments raised by

Plaintiff that Defendants have never had the opportunity of addressing and which are central to Plaintiff's case.

## RELEVANT BACKGROUND TO OBJECTION

Plaintiff has alleged that Defendants, through the actions in 2010-2011 of a related company that held bonds – which bonds financed Plaintiff's infrastructure development of the Fiddler's Creek community, caused Plaintiff to incur over an additional million dollars in legal fees in its confirmed chapter 11 reorganization by "riling up" other constituencies in the bankruptcy case to oppose Plaintiff's proposed plans. Those plans deferred payment of the bonds. Plaintiff claims that this "riling up" violated various contractual and tort duties. The vast majority of fees which Plaintiff blames on Defendants do not reflect and are not alleged to be the direct result of Defendants' pleadings or arguments in court. Instead, the crux of the complaint is that Defendants motivated or instigated other third parties in the bankruptcy, including other bondholders, and caused them to oppose Plaintiff's proposals in bankruptcy.

Plaintiff served a proposed expert report on causation of damages in this bankruptcy case authored by Paul Singerman, Esq. ("**Singerman**"). Plaintiff also served a proposed expert rebuttal report of retired U.S. Bankruptcy Judge Lew Killian, Esq. ("**Killian**") in response to one of Defendants' experts, retired U.S. Bankruptcy Judge William Brown, Esq. ("**Brown**"), who Defendants have offered to opine on the bankruptcy case, but in a different manner.

Defendants timely moved to exclude both Singerman and Killian under *Daubert* on July 29, 2016 for different reasons (Doc. Nos. 351, 353). Plaintiff responded in opposition to both of these motions on August 18, 2016 (Doc. Nos. 378, 379). On August 25, 2016, Defendants sought to reply to both of Plaintiff's responses in light of their respective contents (Doc. Nos. 398, 399). Defendants sought a 6-page reply as to Killian and a 7-page reply as to

Singerman.  Plaintiff refused to agree to this relief, as Defendants noted in their Local Rule 3.01(g) conferral.  Defendants also noted their belief that the substance of their reply requests would be sufficient in this case, where Plaintiff has been granted a reply every time one was sought, except for where the motion was set for a hearing.  Doc. Nos. 97, 134, 145, 227, 251, 281.  Plaintiff responded in opposition to Defendants' requests for replies on the very same day (Doc. Nos. 400, 401).  Five days later, on August 31, 2016, Magistrate Judge Mirando entered the Order denying Defendants' requests (Doc. No. 406).

## STANDARD FOR REVIEW OF OBJECTIONS

The Court may "reconsider any pretrial matter" if the order "is clearly erroneous or contrary to law."  28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a).  An order entered by a U.S. Magistrate Judge on a non-dispositive issue "is contrary to law 'when it fails to apply or misapplies relevant statutes, case law, or rules of procedure.'"[1]  Such an order is clearly erroneous "when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."[2]

## BASES FOR RELIEF SOUGHT

Defendants respectfully submit that the Order is "contrary to law" and "clearly "erroneous" for failing to apply the correct reply standard and looking past new facts and arguments identified in Defendants' requests for reply related thereto.

I.   **The Order is "contrary to law" for failing to apply the correct reply standard, adding requirements that create a paradox of compliance with Local Rule 3.01.**

Local Rule 3.01 has been read by this Court and the Eleventh Circuit as a straightforward

---

[1] *Malibu Media, LLC v. Doe*, 923 F. Supp. 2d 1339, 1347 (M.D. Fla. 2013) (internal citations omitted) (collecting authority).  This Court has that the Eleventh Circuit otherwise considers the application of the wrong standard to also amount to an abuse of discretion. *See Fiore v. Goodyear Tire & Rubber Co.*, No. 2:09-CV-843-FTM-29, 2010 WL 4537750, at *1 (M.D. Fla. Nov. 3, 2010) (Steele, J.).

[2] *Santiago Manuel A. v. Jamison*, No. 2:13-CV-781-FTM-29CM, 2015 WL 5091990, at *1 (M.D. Fla. Aug. 28, 2015) (Steele, J.) (citing *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948)).

3

but discretionary standard.  *See, e.g., Santiago Manuel A. v. Jamison*, No. 2:13-CV-781-FTM-29CM, 2015 WL 5091990, at *1 (M.D. Fla. Aug. 28, 2015) (Steele, J.) ("In the exercise of the Court's discretion the motions for leave to reply will be denied."); *Mock v. Bell Helicopter Textron, Inc.*, 456 F. App'x 799, 803 (11th Cir. 2012) ("On the reply request claim, the district court possessed almost complete discretion to disallow the filing of a reply brief under the court's local rules, and we affirm its decision to do so here. *See* M.D. Fla. Local Rule 3.01(c) (stating that '[n]o party shall file any reply' to an opponent's response to a motion 'unless the Court grants leave.').")."

The Order, however, articulates three requirements; under it, a reply request must (i) identify "new law or facts;" (ii) show "good cause;" and (iii) be beneficial to the Court. Doc. No. 406 at 2 (internal citations omitted).

The first of these two requirements are not found in the text of Local Rule 3.01 or the relevant case law applying it.[3]  The Order nonetheless cited these two added requirements – "new law or facts" and a showing of "good cause" – in denying Defendants' reply requests. Doc. No. 406 at 3 ("Defendants have not shown good cause for filing a reply because they identify neither new law nor facts within Plaintiff's responses that need to be addressed by a reply.").

The Order thus applied the incorrect standard by requiring "new facts or law" and "good cause" and should be set aside as contrary to law.  Additionally, even under that standard, replies should have been permitted to prevent substantial prejudice and aid the Court.

Defendants have been highly prejudiced by the misapplication of this heightened standard for a reply brief, which creates a paradox where adherence to the letter and spirit of

---

[3] The Order cites only non-binding cases from one other District Judge and one other Magistrate Judge for these additional requirements of "new facts or law" and "good cause," concepts which relate to, respectively, supplementing and amending pleadings, not motions. *Id.*

Local Rule 3.01, which mandates that details of the proposed reply not be contained in they request for a reply, results in a denial of the reply for lack of setting forth the particulars of the reply. If Defendants had included more detail in their reply requests, they would have violated Local Rule 3.01(d)'s proscription on including the substance of the reply in the request for it.

**II.      The Order is "clearly erroneous" for misapplying its stated standard, looking past new facts and arguments identified in Defendants' requests for reply related thereto.**

The Order does not address the three sets of new facts and arguments identified in the requests for reply, rendering it clearly erroneous on its own stated standard. Those new facts and arguments come in the form of, essentially, substantive amendments, set forth for the first time in a responsive brief, of expert testimony and reports. Defendants have had no ability to respond to these re-writes, much less seek discovery on them, due to the timeline involved.[4] In addition, Plaintiff has accused Defendants' counsel of misleading the Court and sought independent relief, suggested as a sanctions, on that basis. Again, Defendants are substantially prejudiced if they are at risk of such sanction without the opportunity to reply to the relief requested by Plaintiff.

> *1. Defendants should be allowed to reply because Plaintiff injected new facts and law in attempting to rewrite the testimony of Singerman.*

Defendants' *Daubert* motion sought to exclude Singerman for, *inter alia*, impermissibly opining that legal fees were caused by third-party actions motivated by Defendants. *See, e.g.,* Doc. No. 351 at 9. Plaintiff responded by attempting to re-style Singerman's opinions as assumptions. *See, e.g.,* Doc. No. 378 at 7. In addition to amending Singerman's report and testimony, this position directly contradicts the stated position of Plaintiff in this Court, where its

---

[4] Plaintiff served its purported expert reports in January of 2016. Defendants attempted to clarify the positions in those reports by deposing the authors in March and May of 2016. Plaintiff then amended Singerman's report at the close of discovery on July 1, 2016. Defendants sought to exclude Singerman and Killian based on their reports, testimony, and amendment (as to Singerman) on July 29, 2016. Plaintiff thereafter responded with the new positions and arguments on August 18, 2016.

counsel pointedly noted that Plaintiff could not set forth damages without Singerman because it needed an expert to opine on causation.[5] Defendants are entitled to a reply because Plaintiff's attempt to recast opinions as assumptions raises (i) new facts, (ii) new legal issues, and (iii) results in an amended expert report to which Defendants have not been permitted to respond.

First, Plaintiff's attempt to recast of Singerman's opinions into assumptions contradicts Singerman and Plaintiff's prior positions, which acknowledged that Singerman was testifying as to fee caused by third-party actions motivated by Defendants. In this case, causation of third party action entails an inquiry into motivation.[6] Singerman's report explicitly stated that "Defendants wrongful actions in the Bankruptcy Case <u>caused</u> ordinarily routine matters to become long and expensive." Singerman Report at 9 (emphasis added).[7] The "Assumptions" section of Singerman's report contains four assumptions; none of them are that fees caused by third party actions were motivated by Defendants.[8] Rather, Singerman testified about fees allegedly caused by third parties motivated by Defendants as a basis for his opinion. *See, e.g.,* Singerman Dep. 73:19-21; *id.* at 101:10-16 (stating that he holds the view that Defendants "<u>caused the opposition</u>" to motions for extensions of exclusivity.").[9] And, Plaintiff previously

---

[5] Doc. No. 336 at 58:11-59:19 (arguing that expert will "rely on" the discovery developed to "opine on causation") (quoted in full at Doc. No. 351 at 9).

[6] For Defendants to have caused a third party would be for Defendants to have somehow affected its motives, intent, and state of mind. Otherwise, the party could have taken the same action and Plaintiff would have incurred the same fee, but it would not be a damage attributable to Defendants. Much time was spent at Singerman's depositions attempting to understand how he determined which fee entries to have been caused by Defendants, and which did not, as Defendants do not appear within the text of the fee entries. Singerman thus opines about third-party motives every single time he uses a phrase that a third-party was "prompted by" Defendants into action or took action "resulting from the conduct of Defendants" is opining about a third party's motivation.

[7] Singerman lists actions related to third parties, stating, as just one example, that Defendants were "causing other parties to oppose confirmation." Singerman Report at 7. Singerman states that his report calculates the damages "occasioned by the Defendants conduct" by identifying fees and costs "that are attributable to the Defendants' wrongful conduct." Singerman Report at 8.

[8] Singerman Report at 3 (filed as Doc. No. 351-1 at 3) ("Assumptions" section identifying (i) applicability of the wrongful act doctrine to Defendants' actions, (ii) ITG's actions are attributable to Defendants, (iii) reasonableness and necessity of fees approved by the bankruptcy court, and (iv) fees were paid).

[9] *See also, e.g.,* Singerman Dep. 266:6-9 (emphasis added), May 12, 2016 ("The actions taken by the Defendants and their affiliates were – substantially <u>contributed to and were concurrent causes of fees</u>. . . .") (emphasis added);

argued to this Court that it could not even give an estimate of damages or identify the aspects that Defendants allegedly caused damages to without an expert, which ultimately became Singerman.  Doc. No. 336 at 58:11-59:19 (arguing that expert will "rely on" the discovery developed to "opine on causation") (quoted in full at Doc. No. 351 at 9).

Plaintiff now takes the position Singerman was actually <u>not</u> opining as to what fees were caused by third party actions that Defendants' motivated but instead assuming such motivation. Doc. No. 378 at 7 ("Singerman is simply <u>not</u> opining on the motivations of these third parties, and he made that clear several times in his deposition.") (emphasis added).  Plaintiff does not cite anything in support of this sentence, much less any portions of Singerman's deposition wherein he "made that clear."  Plaintiff only cites testimony as to Singerman's belief that the "substantial factor" test applies instead of the "but-for" test, discussed below.[10]

Rather, Plaintiff quotes Singerman as stating that he highlighted fees that he believed "were in someway related to or <u>resulting from</u> the conduct of Defendants – or other parties who took action or positions that were <u>prompted by</u> . . . Defendants."  Doc. No. 378 at 7 (quoting Singerman Dep. 21:13-25; 22:1) (emphasis added).[11]  Statements, in Singerman's own words, about third party action that was "resulting from the conduct of Defendants" or was "prompted by" Defendants are statements about causation and third-party motivation.  This original position, to which Defendants addressed their *Daubert* motion, is also consistent with Plaintiff's prior argued position justifying, according to Plaintiff, the refusal to provide a damages estimate in discovery prior to provision of expert reports.

*id.* at 357:24-358:2  ("They were more of a <u>concurrent cause and a substantial factor in the efforts of others to oppose</u> the DIP financing after the initial fee application period.") (emphasis added).

[10] *Id.* at 8 n.14, 9 n.15.  In those portions of the deposition, Singerman never testifies that he is assuming away causation; rather, he testifies concerning what standard he uses to opine on causation.  *Id.*

[11] Plaintiff likewise cites a portion of Singerman's deposition right before statement wherein he states that "I believe the evidence confirms ITG or [Defendants' representatives] were provoking, riling up, instigating or prompting others or urging others, including U.S. Bank, to take action."  Doc. No. 378 at 6.  Further, Defendants' motion cited numerous portions of the Singerman's deposition confirming this stance as to causation.  *See* Doc. No. 351 at 6.

Plaintiff cannot relegate and re-label such statements, from the expert himself, as "assumptions," when the expert had every opportunity to list them as such in his initial report, answer numerous questions about specific entries by stating he had made such assumptions, or include them in his amendment after the depositions at the close of discovery.

Plaintiff's prior position on this issue begs the question:  if Plaintiff could not even identify "each category of damages" as required by Rule 26, how did it know what "assumptions" to provide to Singerman about them?   Plaintiff's attempt to re-label opinions as assumptions now amounts to an impermissible functional amendment to Singerman's report.  If nothing else, that attempt injects a new factual issue that is grounds for a reply.

Second, as additional grounds for a reply, Plaintiff's response also introduces three new legal issues: (i) the sufficiency of the newfound "assumptions," (ii) which causal test applies, and (iii) the potential prejudice from a report built on assumptions like a house of cards.  Defendants do not seek to fully brief these issues in this objection but believe the Court would benefit from such briefing in resolving the motion given the case law on these issues.

Case law prevents an expert from assuming away the world; for instance, courts have excluded experts relying on broad assumptions about liability because such assumptions prevent the court from testing the expert's conclusions.[12]  Likewise, case law makes it clear that the "substantial factor" test for causation applies only in situations with multiple, independently sufficient causes.[13]   Finally, courts have noted the implicit danger of admitting an expert on

---

[12] *See, e.g. R.F.M.A.S., Inc. v. So*, 748 F. Supp. 2d 244, 269 (S.D.N.Y. 2010) ("An expert's testimony that plaintiff's damages were caused by a series of acts by defendants is necessarily an exercise in speculation when the acts that purportedly caused the damages are only hypothesized to have occurred.").  The excluded experts in *R.F.M.A.S.* assumed that defendants "were liable on all causes of action" and then attempted to opine on causation of damages. *Id.* at 255.  The *R.F.M.A.S.* court excluded the experts because they had "not explained their assumptions with the level of specificity necessary to allow defendants' counsel and the jury to test their conclusions." *Id.* at 270.

[13] *See, e.g. Stahl v. Metro. Dade Cty.*, 438 So. 2d 14, 18 (Fla. Dist. Ct. App. 1983) ("As pointed out by Prosser, however, there is one limited type of case where the "but for" test fails and has not been employed: 'Restricted to the question of causation alone, and regarded merely as a rule of exclusion, the 'but for' rule serves to explain the

damages for complex matters where the opinion is unsupported by a sufficient factual foundation.[14] These issues would be addressed in a reply brief.

### 2. Defendants should be allowed to reply to the new facts that Plaintiff introduced by accusing Defendants of misleading the Court and seeking independent relief on that basis.

Plaintiff's response to the Singerman *Daubert* motion suggests, at least ten times, that Defendants and their counsel have made "blatant misrepresentations" and been "disingenuous" to this Court and that the alleged "'misrepresentations alone require that the Motion be denied.'" Doc. No. 398 at 1 (citing Doc. No. 378 at 1-2, 4-6, 12, 14, 18). The significance of this goes beyond a mere accusation that Defendants do not take lightly. Based upon Plaintiff's erroneous recitation of facts and misreading of Defendants brief, Plaintiff suggests it is entitled to relief by way of a sanction. Such relief should only be permitted upon an appropriate motion, but in any event, Defendants should not be denied an opportunity to reply to such serious accusations, particularly when they are claimed as sufficient basis to rule in Plaintiff's favor on the serious issue of admissibility of the Singerman report and testimony.

Plaintiff's accusations, and their contrary version of the actual facts, are new facts upon which Plaintiff seeks independent relief in the way of the suggested sanction. For example, Plaintiff claims Defendants misled the Court regarding the scope of Singerman's record review. Plaintiff notes that Singerman reviewed more than one e-mail, and argues Defendants misrepresent that figure. *See, e.g.,* Doc. No. 378 at 2, 12 ("a review of Mr. Singerman's expert report alone clearly states that he reviewed five separate depositions of the representatives of the

---

greater number of cases; but there is one type of situation in which it fails. If two causes concur to bring about an event, and either one of them, operating alone, would have been sufficient to cause the identical result, some other test is needed.") (emphasis added).

[14] *See, e.g., Elcock v. Kmart Corp.*, 233 F.3d 734, 756 (3d Cir. 2000) ("Given the realities of litigation, the opinion of a witness impressed by the court with the label of "expert" may carry a great deal of weight with a lay jury, particularly in matters as complex as lost future earnings assessments. Permitting such a witness to offer an opinion unsupported by a sufficient factual foundation would significantly increase the risk of misleading the jury and confusing the issues, the very dangers against which Rule 403 defends.")

Defendants, **including exhibits**.  These five depositions contained numerous exhibits, including approximately 97 e-mails!") (emphasis in original).  Defendants identified and cited these new assertions of fact in their reply requests.  Doc. No. 398 at 1 (citing Doc. No. 378 at 2, 12).

But, Plaintiff's assertions contradict Defendants' representations in the Singerman *Daubert* motion, which clearly stated that Mr. Singerman had reviewed one e-mail in addition to deposition exhibits and defined deposition transcripts to include their exhibits.  Doc. No. 351 at 2, 17 n. 13 ("**the transcripts included deposition exhibits**.").  Doc. No. 351 at 17 n.13 (emphasis added).  Defendants separated the "1 e-mail" from the other depositions exhibits (chosen by Plaintiff's counsel in its depositions) as part of a broader argument that Mr. Singerman's review relied on cherry-picked facts; Defendants did not suggest or state no deposition exhibits contained emails.  Doc. No. 351 at 18-19.

Similarly, as one more example, Plaintiff argued that Defendants misrepresented the total number of transcripts reviewed by Singerman.  Doc. No. 378 at 12. Yet, Defendants had articulated that each transcript referenced included multiple days of the same deponent. See, e.g., Doc. No. 351 at 2 ("Out of the transcripts of 39 deponents. . . Mr. Singerman's report states that, after amendment, it relied on a review of  . . .  parts of five deposition transcripts.").  Defendants made this distinction clearer elsewhere. *See, e.g.,* Doc. No. 351 at 17 ("Five years of discovery in the instant lawsuit have generated . . . 39 depositions, several of which spanned multiple days (up to five)").  In fact, Singerman's report states that, of the deposition transcript of Mr. Sanford, Singerman read only one day out of five; of Carter, Singerman read two days out of the four total.  Doc. Nos. 351-1 at 19, 351-2 at 4.  These were continued depositions, that in most instance had sequential transcript page numbering across days.

10

There are other examples of misrepresentations that are similarly not so, which would be addressed in a reply.

Plaintiff's new facts and arguments about Defendants' alleged misrepresentations, which relate directly to some of the grounds in the Singerman *Daubert* motion, were identified in Defendants' request for a reply, Doc. No. 398 at 1 (citing Doc. No. 378 at 1-2, 4-6, 12, 14, 18), and were sufficient grounds for the reply. Stating any more detail therein, would have likely exceeded the Local Rules' restriction on inclusion of the substance of the reply and Defendants ought not be punished for such compliance.[15]

### 3. Defendants should be allowed to reply to new facts that Plaintiff raised by attempting to rewrite the testimony of Killian as to contract interpretation.

Plaintiff takes an even broader attempt at re-writing the expert report and testimony of Killian. The first two pages of the Killian report dissect and propose an interpretation of the applicable confidentiality agreement at issue (the "CA") and Killian's testimony explicitly stated he relied upon that interpretation in forming his opinions. *See* Doc. No. 353 at 5-7, Exhibit B. Yet, in another amendment via responsive pleading, Plaintiff now claims that Killian is not proposing any interpretation of that contract. *See* Doc. No. 379 at 16 ("Mr. Killian is not being offered by the Plaintiff to opine on the interpretation of the CA").

Defendants have not been presented an opportunity to brief the Court upon the implication of Killian's report and testimony being so revised at this stage. To the extent the Court were to rely upon that suggested revision by Plaintiff, it would be highly prejudicial and deny Defendants an opportunity to be heard on this issue. Additionally, this revision is months after the close of discovery and deadlines for expert reports.

In addition to taking a 180 degree position change on interpretation of the CA, the Killian

---

[15] Defendants are necessarily providing additional detail here for context to this Court to set forth the sufficiency of the grounds of its objections to the Order.

11

response (Doc. No. 379) spends much of its space articulating arguments for exclusion of Defendants' expert witness Brown. *See e.g. Id.* at 3-6, 8, 13-14. In doing so, Plaintiff mischaracterized Brown's report and incorrectly states that it was not aware of the scope of Brown's report, which is a new contested fact interjected in the response. *Id.* In a reply, Defendants would provide evidence to this Court of the fact that the parties conferred regarding the scope of Brown's report and opinions consistent with Brown's testimony and that Plaintiff was even provided an extension to disclose the rebuttal report.

To the extent the Court might rely upon the arguments in the Killian response that are arguments against admitting Brown or the contested assertion that Killian was unaware of the scope of the Brown report, due process and fairness require that Defendants be permitted to reply. These issues were raised in the motion for leave to reply, while being sensitive to the Court's limitations in the Local Rules regarding the scope of a request for a reply.

### 4. *The Order appears to rely upon a different set of facts than presented in the requests for replies.*

The Order contains references not included in either motion for leave to file a reply. First, the Order begins with a reference to a ten (10) page reply request, though Defendants two requests were for six (6) and seven (7) pages, not ten (10). Doc. No. 406 at 1. Second, the Order suggests Defendants failed to complete a conferral process and had not reached an agreement with Plaintiff. *Id.* at 1-2, n.1. Yet, each motion for leave to reply specifically noted that conferral had been completed and Plaintiff refused to agree to the requested reply. Doc. No. 398 & 399, each at 2.

In this regard, it appears that the Order may have faulted Defendants for actions not properly attributable to Defendants (such as a failure to comply with the Local Rules). To the extent the Order relies upon incorrect facts, it is clearly erroneous.

12

## CONCLUSION

Defendants regret taking up this Court's limited resources with the present dispute but believe they have no choice given the possibility of prejudice they face if the Court considers the admissibility of Plaintiff's experts as newly re-written without Defendants having an opportunity to address those amendments first presented in Plaintiff's responses to Defendants *Daubert* motions. Defendants should be permitted an opportunity to address those positions and newly asserted facts, which will assist this Court in resolving these *Daubert* motions.

Pursuant to Local Rule 3.01(g) (to the extent it applies and in an abundance of caution), undersigned counsel hereby certifies that he has conferred with Plaintiff's counsel in a good faith effort to resolve the issues raised in this objection.  Plaintiff opposes the relief sought herein.

**WHEREFORE**, Defendants respectfully request that this Court modify or set aside the Order and allow Defendants to file the replies sought.

Dated:  September 19, 2016.

/s/ Scott A. Underwood
Scott A. Underwood, FBN 0730041
scott.underwood@bipc.com
Frank S. Harrison, FBN 0099438
frank.harrison@bipc.com
BUCHANAN INGERSOLL & ROONEY PC
401. E. Jackson St., Ste. 2400
Tampa, FL  33602
Tel:  (813) 228-7411 / Fax:  (813) 229-8313
*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and accurate copy of the above and foregoing has been furnished to those parties registered to receive service via CM/ECF on September 19, 2016.

/s/ Scott A. Underwood
Florida Bar Number 0730041